UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROBERT NAMER**                                                                 **CIVIL ACTION**

**VERSUS**                                                                       **NO. 15-3417**

**ANGIE VERLODT MARTINO, ET AL.**                                                **SECTION "B"(5)**

ORDER AND REASONS

I.   NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Defendants', Angie Verlodt Martino and Black Dog Accounting ("BDA Defendants"), "Motion to Dismiss for Lack of Personal Jurisdiction" (Rec. Doc. 21) as well as Defendant's, Winner's Marketing ("Winner's"), "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)" (Rec. Doc. 22). Also before the Court is Plaintiff's, Robert Namer, opposition thereto (Rec. Doc. 29) as well as Defendants' replies (Rec. Docs. 33, 34). Defendants seek dismissal of this case due to lack of personal jurisdiction. **IT IS ORDERED** that Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**, as set forth more fully below.

II.  FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that he was an outside consultant for Winner's up until December 31, 2014, working in whole or in part from his office in Metairie, Louisiana. (Rec. Doc. 1 at 3). Plaintiff alleges that Martino and/or her company, Black Dog, were engaged by Defendant Winner's to provide various accounting

services, including the preparation of Plaintiff's 1099 forms. (Rec. Doc. 1 at 3). Plaintiff alleges that he was supposed to, but did not, receive 1099 forms for revenue he received from Winner's in the 2009, 2010, 2011, 2012, and 2013 tax years. (Rec. Doc. 1 at 3). Plaintiff alleges that he requested the forms to no avail, and consequently filed his taxes without them. (Rec. Doc. 1 at 3).

Plaintiff alleges that he received his 1099 forms for the first time in 2015, and at this time noticed "significant inaccuracies." (Rec. Doc. 1 a 4). Plaintiff states that, as a result of these inaccuracies, his apparent tax liability was or could be dramatically increased. (Rec. Doc. 1 at 5). Plaintiff alleges that he requested Winner's, Martino, and Black Dog correct their calculations and issue revised 1099 forms or provide him with supporting documentation, which they did not do. (Rec. Doc. 1 at 6). Plaintiff states that he has incurred, or alternatively been exposed to, tax liabilities to the IRS that are much higher than would be warranted by the amounts he allegedly received. (Rec. Doc. 1 at 7). As a result, Plaintiff alleges that he has had to pay, or alternatively may have to pay, serious fines, penalties, and interest on the increased liability. (Rec. Doc. 1 at 7-8). Plaintiff alleges that he is likely to suffer harm to his reputation as well as other emotional and mental anguish. (Rec. Doc. 1 at 8).

Plaintiff filed this suit on August 12, 2015, relying on theories of negligence under Louisiana law and the duty of care in preparation of tax documentation owed by a corporation under Common Law. (Rec. Doc. 1 at 9). Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and Plaintiff is a citizen and resident of Louisiana, Defendant Martino is a citizen and resident of California, Defendant Black Dog is a California corporation, and Defendant Winner's is a California corporation. (Rec. Doc. 1 at 1-2).[1] Plaintiff alleges that personal jurisdiction over Defendants is proper because:

> [Defendants] have handled tax matters relating to Namer, a Louisiana citizen and resident arising out of services that Namer performed, in whole or in part, while working from his office in Metairie, Louisiana; they have corresponded with and/or otherwise communicated with Namer while he was working from his office in Metairie, Louisiana; they have mailed tax forms that they prepared concerning Namer to his address in Metairie, Louisiana; Namer performed outside consulting services for one or more of them while he was working from his office in Metairie, Louisiana; and the events in question transpired, in whole or in part in Louisiana and/or caused damages to Namer in Louisiana.

(Rec. Doc. 1 at 1-2). This last issue is the subject of this opinion.

---

[1] Defendant Winner's is actually a Texas corporation with its principal place of business in California. (Rec. Doc. 22-1 at 4).

3

**III. CONTENTIONS OF MOVANT**

Defendants contend that Plaintiff has failed to show that there is either general or specific personal jurisdiction over them. Specifically, Defendant Winner's argues that it has no ties to Louisiana as a Texas corporation with its principal place of business in California, that it did not employ Plaintiff, and, even assuming it did employ Plaintiff, that it hired him as an independent contractor and therefore could not control where Plaintiff conducted business. The BDA Defendants argue that they have no contact with Louisiana and that their only contact with Plaintiff was the preparation of his 1099 forms on behalf of Defendant Winner's (which listed Plaintiff's California address) and the subsequent mailing of the 1099 forms pursuant to Plaintiff's request.

**IV. CONTENTIONS OF OPPONENTS**

Plaintiff contends that there is both general and specific personal jurisdiction over Defendant Winner's due to Defendant Winner's employing him for five years while Plaintiff was a citizen and resident of Louisiana. Plaintiff argues that there is both general and specific personal jurisdiction over all of the Defendants as a result of their refusal to correct the allegedly erroneous 1099 forms, or provide supporting documentation, via communications directed to and from the State of Louisiana, where Defendants knew Plaintiff was residing. Plaintiff maintains that

4

there is general personal jurisdiction over the BDA Defendants as a result of them providing tax and accounting services to IAR Company, a Nevada corporation which conducted extensive business in Louisiana.

**V.    MOTION TO DISMISS STANDARD**

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a *prima facie* case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Court may consider matters

outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.* (citing *Colwell Realty Invs. v. Triple T. Inns of Ariz.*, 785 F.2d 1330 (5th Cir. 1986)).

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). In the instant case, "these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause." *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990); *see also* La. Rev. Stat. § 13:3201 (2014).

"The Due Process Clause of the Fourteenth Amendment protects . . . an individual[] against being made subject to the binding judgments of a forum with which [he] has established no meaningful 'contacts, ties, or relations.'" *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.2d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) exercising

personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316)).

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 262, 472 (1985). General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, [the court] must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). The exercise of personal jurisdiction must comport with the traditional notions of fair play and substantial

7

justice. *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).

**VI. DISCUSSION**

As the burden to prove personal jurisdiction is on the party seeking to invoke the power of the court once a challenge is made, *Luv N'care*, 438 F.3d at 469, this Court will focus on Plaintiff's allegations in determining whether he has made out a *prima facie* showing that the Court has personal jurisdiction over Defendants. *Guidry*, 188 F.3d at 625. Though all of Plaintiff's allegations must be taken as true and all conflicts in the facts resolved in his favor, unsupported allegations refuted by Defendants will not be accepted by this Court. *Thompson*, 755 F.2d at 1165.

Plaintiff alleges that "Defendants all had sufficient contacts with the State of Louisiana to support both specific and general *in personam* jurisdiction[.]" (Rec. Doc. 29 at 1). Because Plaintiff does not differentiate which contacts he is arguing are sufficient to connote specific as opposed to general jurisdiction, this Court will assess each alleged contact introduced by Plaintiff. As will be discussed, Plaintiff has failed to make a *prima facie* showing of personal jurisdiction or even rebut Defendants' evidence highlighting the meritless nature of Plaintiff's claims.

### A. Defendant Winner's Marketing

#### 1. Defendant Winner's Use of Plaintiff's Services for Five Years While Plaintiff was Located in Louisiana

Plaintiff alleges that Defendant Winner's has extensive contacts with the State of Louisiana because it hired Plaintiff as an independent contractor for five years and Plaintiff performed outside consulting services for Defendant Winner's while located in Louisiana. (Rec. Doc. 29 at 1, 5). Plaintiff further argues that it was always understood and agreed between Plaintiff and Defendant Winner's that a significant portion of Plaintiff's work would be performed in Louisiana. (Rec. Doc. 29 at 5). Plaintiff suggests that this is evidenced by Defendant Winner's paying him over one million dollars, which was deposited into his Louisiana bank account. (Rec. Doc. 29 at 2, 5). Even accepting these allegations as true, this Court is skeptical as to whether they are sufficient to furnish this Court with jurisdiction. However, as will be discussed, Plaintiff's unsupported allegations are controverted by affidavits of Defendant Winner's.

Defendant Winner's is a Texas corporation with its principal place of business in California. (Rec. Doc. 22-1 at 4; Rec Doc. 22-2 at 1). According to the affidavit of the sole shareholder of Defendant Winner's, Alvin Eisman, the corporation was created to provide consulting services to various other business entities ("Blue Haven Pools") in which Eisman had an ownership interest.

(Rec. Doc. 22-2 at 2). Eisman states that although Plaintiff was employed by Blue Haven Pools, Defendant Winner's never hired him with Eisman's knowledge or consent. (Rec. Doc. 22-2 at 2). Rather, Eisman states that Plaintiff caused funds generated by Blue Haven Pools, in excess of one million dollars, to be transferred to Defendant Winner's and subsequently paid to Plaintiff, without Eisman's knowledge or consent. (Rec. Doc. 22-2 at 2). Eisman states that the 1099 forms from these transactions, listing Defendant Winner's as the payer and Plaintiff as the recipient, are the subject of this litigation. (Rec. Doc. 22-2 at 2; Rec. Doc. 22-3 at 2-6).[2] Finally, Eisman articulates that Defendant Winner's has no relevant contacts in the state of Louisiana. (Rec. Doc. 22-2 at 2-3).

Plaintiff provides nothing to rebut the affidavit of Eisman provided by Defendant Winner's on the issue of Plaintiff's employment, his transfer of funds between Blue Haven Pools and Defendant Winner's, or Defendant Winner's other contacts with Louisiana. Rather, Plaintiff supplies this Court with repetitive and conclusory statements citing irrelevant documents as support. In addition to citing his own complaint (Rec. Doc. 1), Plaintiff cites three documents wholly unrelated to this case.

---

[2] Eisman points out that these 1099 forms reflect that Plaintiff's address is in California, not Louisiana. (Rec. doc. 22-2 at 2-3; Rec. Doc. 22-3 at 2-6).

First, Plaintiff cites his own affidavit from a prior lawsuit which occurred in the Superior Court of the State of California for the County of San Diego Central Division. (Rec. Doc. 29 at 1, 5) (citing Rec. Doc. 34-1). Not only is Defendant Winner's not a named party to this suit, but there is not a single reference to Defendant Winner's in the document. This Court is perplexed as to how this affidavit is remotely persuasive or even relevant. Second, Plaintiff cites the deposition testimony of Defendant Martino, conducted in contemplation of the aforementioned California lawsuit. (Rec. Doc. 29 at 5) (citing Rec. Doc. 29-2). Yet again, Defendant Winner's is not a party to this suit, nor is Defendant Winner's mentioned in this deposition. Further, Defendant Martino's deposition testimony is inadmissible pursuant to Fed. R. Civ. P. 32(a)(8) and Fed. R. Evid. 804, as Defendant Martino was not a party to the California lawsuit, the California lawsuit concerned different subject matter, and no other circumstances are present so as to warrant its use. Third, Plaintiff cites a letter from Eisman that states Plaintiff would maintain offices in both California and Louisiana during his employment with Blue Haven Pools. (Rec. Doc. 29-1 at 5) (citing Rec. Doc. 29-4). The letter makes no reference to Defendant Winner's whatsoever.

As addressed above, Plaintiff does not provide any evidence that he was employed by Defendant Winner's as an independent contractor to refute the sworn affidavit of Eisman. Notably,

Plaintiff has not even offered a sworn affidavit to the contrary.[3] Accordingly, Plaintiff has failed to make a *prima facie* showing of personal jurisdiction through his allegations that Defendant Winner's established minimum contacts with Louisiana through both specific and general jurisdiction by employing Plaintiff.

### 2. Defendant Winner's Communications with Plaintiff While He Resided in Louisiana

Plaintiff further argues that Defendant Winner's established minimum contacts with Louisiana when it refused to correct the allegedly erroneous 1099 forms, or provide supporting documentation, via communications directed to and from the State of Louisiana, where Defendant Winner's knew Plaintiff was residing. (Rec. Doc. 29 at 2, 5-6). Though Plaintiff does not cite any support for this allegation, such pleadings must be taken as true in determining whether a *prima facie* showing of personal jurisdiction has been made. As will be discussed below, this Court does not find that Plaintiff has made such a showing.

First, this Court points to a prior lawsuit initiated by Plaintiff. *See Namer v. Lahlou*, No. 13-6477 (E.D. La. filed Nov. 22, 2013). In that case, Plaintiff named as defendants several former Blue Haven business associates, including Heisman, alleging a conspiracy to extort and divest him of ownership in Blue Haven.

---

[3] Ironically, the most persuasive evidence as to Plaintiff's employment with Defendant Winner's were the 1099 forms, provided by Defendant Winner's. (Rec. Doc. 22-3 at 2-6).

*See* Order and Reasons, *Namer*, No. 13-6577, (Rec. Doc. 59 at 1). "According to Plaintiff, this plan culminated in a telephone call from Defendants in which they offered to sell him full ownership in [Blue Haven] (and then refused to do so) and communicated various threats." Order and Reasons, *Namer*, No. 13-6577, (Rec. Doc. 59 at 2). As is the case here, Plaintiff alleged that these communications provided the Court with personal jurisdiction. The Court declined to answer whether such insignificant communications could constitute minimum contacts, but instead relied on the fact that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. *See* Order and Reasons, *Namer*, No. 13-6577, (Rec. Doc. 59 at 6).

This Court adopts a similar rationale. In determining whether the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice, courts consider (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King Corp.*, 471 U.S. 476-77.

As in the prior case, litigation of this dispute in Louisiana would put a considerable burden on Defendant Winner's, which is incorporated in Texas and has its primary place of business in

California.[4] Further, all the alleged refusals that were communicated to Plaintiff took place in California, and concern 1099 forms that were prepared in California and list solely California addresses. Plaintiff's argument that there is no unfairness to or burden on Defendant Winner's in light of "the modern age of telecommunications and digital document production and exchange" is unconvincing. (Rec. Doc. 29 at 3). Under such an argument, the "fair play and substantial justice" prong of personal jurisdiction would likely cease to exist. Finally, Louisiana has no interest in adjudicating a dispute that, from the outset, appears to have taken place purely in California between parties with the majority of their contacts in California.

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Defendant Winner's Motion to Dismiss is **GRANTED** and Plaintiff's claims against Defendant Winner's are **DISMISSED WITHOUT PREJUDICE**.

### B. The BDA Defendants

#### 1. The BDA Defendants' Relationship with IAR Company

Plaintiff asserts that there is general personal jurisdiction over the BDA Defendants because they provided tax and accounting services to IAR Company. (Rec. Doc. 29 at 3, 6). Plaintiff argues that such services constitute minimum contacts because IAR

---

[4] As was already noted, this Court previously found that it lacked personal jurisdiction over the sole shareholder of Defendant Winner's, Eisman. Although this is not dispositive as to whether the Court maintains jurisdiction over Defendant Winner's, a different party in a case with different facts, the Court finds this fact persuasive.

14

Company's business activities were to a significant degree carried out by Plaintiff from his offices in Louisiana and because IAR Company owns (and continues to own) real property in Louisiana, from which it has derived income. (Rec. Doc. 29 at 3, 6). Though Plaintiff might be able to argue that personal jurisdiction is proper over IAR Company, this does not establish personal jurisdiction over the BDA Defendants.

As Plaintiff himself notes, IAR Company is a Nevada corporation. (Rec. Doc. 29-1 at 1). Nonetheless, in support of exercising jurisdiction over the BDA Defendants, Plaintiff notes that IAR Company conducted business in Louisiana (through Plaintiff) and owns property in Louisiana. (Rec. Doc. 29-1 at 3; Rec. Doc. 29-3). Plaintiff asserts that, because the BDA Defendants provided services to IAR Company, personal jurisdiction over the BDA Defendants is proper. This Court does not agree. Even accepting all of Plaintiff's allegations as true, Plaintiff has at best proven that the Court *might* have jurisdiction over IAR Company, a corporation not a party to this lawsuit. To conclude that the BDA Defendants are also subject to general personal jurisdiction by way of interacting with a corporation that has some contact with the state of Louisiana would be a huge departure from the standard of "continuous and systematic activity." Such a holding would imply that general personal jurisdiction could extend to any individual or entity that came into contact with another individual or entity

15

over whom a state has personal jurisdiction. This Court rejects such a broad interpretation and the likely absurd results from adopting such.

### 2. The BDA Defendants' Communications with Plaintiff While He Resided in Louisiana

As Plaintiff contended in regard to Defendant Winner's, Plaintiff argues that the BDA Defendants established minimum contacts with Louisiana when they refused to correct the allegedly erroneous 1099 forms, or provide supporting documentation, via communications directed to and from the State of Louisiana, where the BDA Defendants knew Plaintiff was residing. (Rec. Doc. 29 at 2, 5-6). For the reasons already set forth in the discussion of Defendant Winner's, *supra*, it would offend traditional notions of fair play and substantial justice to hail the BDA Defendants into a Louisiana court when Defendant Martino is a citizen of California doing business as Defendant Black Dog and all relevant conduct took place in California.

Even more compelling, Defendant Martino has supplied a sworn affidavit stating that Plaintiff requested the 1099 forms only once, at which time they were sent to him. (Rec. Doc. 21-2 at 3). This is further supported by a letter from Defendant Martino's attorney. (Rec. Doc. 21-2 at 10). Accordingly, it appears the only contact that the BDA Defendants had with the state of Louisiana, other than the instant dispute, was the mailing of Plaintiff's

1099 forms on July 7, 2015. Plaintiff has not provided anything to rebut this fact.

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the BDA Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's claims against the BDA Defendants are **DISMISSED WITHOUT PREJUDICE**.

### VII. CONCLUSION

As set forth more fully above, Plaintiff has failed to make out a *prima facie* showing of personal jurisdiction over the Defendants in this lawsuit. Consequently, **IT IS ORDERED** that Defendant Winner's Motion to Dismiss is **GRANTED** and the BDA Defendants' Motion to Dismiss is **GRANTED** so that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.[5]

New Orleans, Louisiana, this 14th day of January, 2016.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Alternatively, the same result would have occurred under summary judgment principles.

17